UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| VELMA PAYTON, individually and as the surviving mother of Decedent, LOUIS LYEN PAYTON, deceased. )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF ST. LOUIS, et al. )<br>Defendants. ) | Cause No. 4:20-CV-861-SEP |

### MEMORANDUM IN OPPOSITION TO
### DEFENDANTS' MOTION FOR PROTECTIVE ORDER

After a string of prior incidents in which opiates had been uncovered at St. Louis's Workhouse, Louis Payton died on August 1, 2018. Defendants, including corrections officers, supervisors, and the City of St. Louis ("City") have put forth evidence in support of their Motion for Summary Judgment including videos, sworn affidavits, still photographs, and City records. ECF Nos. 10-1-10-5; 12-12-4. However, rather than allowing Mr. Payton's mother, Plaintiff Velma Payton, to uncover facts to refute Defendants' Material Facts, Defendants have instead moved for an order barring any discovery by Plaintiff.

With its paired Motion for Summary Judgment (ECF No. 10) and Motion for Protective Order Staying Discovery ("Motion to Stay") (ECF No. 13), Defendants want it both ways. In their Motion for Summary Judgment, Defendants seek to make use of all evidence in their favor, including sworn testimony of the individual defendants, documents, photographs, and video. At the same time, in their concurrently-filed Motion to Stay, Defendants seek to deprive Plaintiff of *her* right to make use of the discovery process to adequately dispute the facts of summary

1

judgement. This attempt to short-circuit the discovery process is improper and Defendants' Motion to Stay must be denied.

Defendants repeatedly and improperly invoke Supreme Court authority stating that Defendants should be "immune from the burden of discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982). However, this argument ignores the fact that they themselves have already conducted discovery. In the process of drafting sworn statements regarding the recollections of that night, finding documents that allegedly show that they cannot be sued, and producing video and still photos purporting to show a lack of liability on the Defendants' behalf, the Defendants have already participated in the discovery process in a way that has been beneficial to them. What Defendants seek is to avoid discovery that may be beneficial to the Plaintiff. This maneuver is not contemplated in *Harlow* or any other case cited in Defendants' Memorandum in Support of their Motion to Stay.

The unfairness of Defendants' attempt to avoid discovery is particularly pointed here, where access to relevant discovery is almost entirely one-sided. Defendants' variety of evidence identified individuals held in Defendants' jail and who were documented on Defendants' cameras and guarded by the Defendants themselves. In preparing their summary judgment, Defendants are making use of a wide swath of evidence within their own possession, all while trying to deprive Plaintiff of a discovery process where she would be able to depose the Defendants, learn the names of other crucial witnesses, and review records and communication of Defendants resulting from the incident. Defendants' summary judgment filings include the sworn statements of the individual Defendants, yet their Motion for Stay seeks to deprive Plaintiff of the ability to examine these same Defendants before summary judgment.

## ARGUMENT

I. **Defendants' motion should be denied for failure to adhere to the procedural requirements of Federal Rule of Civil Procedure 26(c)(1) and this Court.**

At the outset, Defendants' Motion for Stay should be denied for its utter failure to comply with Federal and Local Rules.

A movant's Rule 26(c)(1) "motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Stockdale v. Stockdale*, No. 4:08-CV-1773 CAS, 2010 WL 1257921, at *1 (E.D. Mo. Mar. 26, 2010) (citing Fed. R. Civ. P. 26(c)(1)). Further, E.D. Mo. L.R. 37-3.04 requires parties to attempt to resolve discovery disputes in advance of any motions, and to certify that such a conference took place. Finally, this Court's specific rules require the filing of a memorandum requesting a telephone conference before such a motion.

Here, Defendants' counsel never contacted the Plaintiff regarding their Motion for Stay pursuant to either the Federal or Local Rules, and they also failed to submit a certification of an attempt to resolve the dispute without court intervention. The "meet-and-confer requirement is mandatory." *Fair v. Royal & Sun All.*, 278 F.R.D. 465, 469 (D.S.D. 2012). Upon this basis alone, the Defendants' motion should be denied. *See id.*; *see also Stockdale*, 2010 WL 1257921, at *2.

II. **Defendants' motion should be denied for failure to show good cause to justify the stay.**

A court may only issue an order staying discovery upon a showing of good cause by the movant. F.R.C.P 26(c)(1). "[T]he mere filing" of a motion to dismiss or summary judgment motion does not constitute good cause. *TE Connectivity Networks, Inc. v. All Sys. Broadband, Inc.*, No. CIV. 13-1356 ADM/FLN, 2013 WL 4487505, at *2 (D. Minn. Aug. 20, 2013). In *Lovelace-El v. Delo*, No. 4:92-CV-2082-DJS, 1994 WL 762407, at *1 (E.D. Mo. July 22, 1994), defendants asserted the defense of qualified immunity in a motion for summary judgment and concurrently

3

filed a motion to stay. This Court denied the defendants' motion to stay pending the "Court's determination of whether defendants [were] entitled to qualified immunity." *Lovelace*, 1994 WL 762407, at *1. The court held that, "it is impracticable to stay all discovery in this matter because it impairs plaintiffs' ability to respond to the motion for summary judgment." *Id.*; *see also Hoxie v. Livingston Cnty.,* No. 09-CV-10725, 2010 WL 822401, *1 (E.D. Mich. Mar. 4, 2010) ("The wheels of justice would surely grind to a halt if discovery were stayed pending dispositive motions and based on such generic allegations of undue burden and expense."); *Standard Bank PLC v. Vero Ins., Ltd.,* No. 08-CV-02127-PAB-BNB, 2009 WL 82494, at *2 (D. Colo. Jan. 13 2009) ("Parties always are burdened when they engage in litigation, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is a consequence of our judicial system and the rules of civil procedure. There is no special burden on the parties in this case.")

Here, as in *Lovelace*, a stay in discovery is impracticable and impairs Plaintiff's ability to respond to Defendants' motion for summary judgment. At this stage, Plaintiff has not been able to propound discovery regarding the video Defendants cite, and have no way of knowing if video from other vantage points exist. Plaintiff lacks information on the specific policy and practices around the video and other monitoring of those incarcerated at the Workhouse. The contact information of some eyewitnesses to Mr. Payton's death is only available through the Defendants' records detailing who was in the room at the time. These facts are required to respond to Defendants' motion for summary judgment and can only be made available to the Plaintiff through discovery. Further, Defendants make no particularized showing of any sort as to how this discovery would pose any special burden to them.

4

Accordingly, Defendants' Memorandum provides no basis by which a Court could find that good cause exists to justify the stay, especially where Defendants (who claim they should not be subject to the burden of discovery) has already availed themselves of many of the burdens of discovery in putting forth their own Motion for Summary Judgment.

*Ballard v. Heineman*, 548 F.3d 1132 (8th Cir. 2008) upon which Defendants rely, is inapplicable for two reasons. First, in that case, the district court specifically provided the plaintiff with the option to file a motion for limited discovery, which the plaintiff failed to file. *Id.* at 1137. Here, Plaintiff plans to file a 56(d) affidavit by Monday, September 14, 2020 detailing the facts that exist that she is entitled to in order to address Defendants' Motion for Summary Judgment. Further, and crucially, *Ballard* involves a case, unlike the current one, in which the plaintiffs did not dispute the material facts of the defendants, and all of the defendant's facts were thus deemed admitted. *Id.* at 1135. It is telling that the primary case cited by Defendants is one in which the plaintiff failed to litigate much of the case; clearly such a situation is not in play here, as Plaintiff will both identify the various forms of discovery necessary for summary judgment in her 56(d) motion and also will dispute Defendants' material facts after making use of discovery, as contemplated by the Federal Rules.

**III.     Defendants' Motion should be denied because the video itself fails to conclusively determine whether liability exists.**

When video evidence does not conclusively resolve the facts of the case, the Eighth Circuit has repeatedly held that *Scott v. Harris* is inapplicable. In *Michael v. Trevena*, 899 F.3d 528 (8th Cir. 2018), the court declined to use video and audio evidence to conclusively decide the issue of liability because "neither party's version of events is 'blatantly contradicted by the record[.]'" *Id, quoting Scott v. Harris* 550 U.S. 372, 380 (2007). While the audio evidence "ma[d]e it fairly clear who said what during the events," the *Michael* court found that "the recordings are insufficient to

5

conclusively resolve whether [defendants] violated [plaintiff]'s constitutional rights." *Id.* Similarly, in *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014), a case in which a jail video was put forward by the defendants, the Court found declined to follow *Harris* and found that qualified immunity was inappropriate because the video did not "conclusively disprove[] the plaintiffs' account of the incident." *Id.*

The Eighth Circuit has long held that a finding of deliberate indifference is a "factually intensive inquiry." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Id.*; *see also Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019); *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

Because the video put forth by Defendants does not conclusively answer all key questions in the case, the motion for stay should be denied, as further discovery is necessary. Defendants falsely claim that the few grainy videos which they produced capture the "entire incident" (ECF No. 14 at 3) and that, as a result, no further discovery is necessary. This is simply untrue, as the videos are insufficient on their own to resolve the issue of liability. The videos omit as much as they purport to show, and these omissions are exactly why discovery is necessary.

One glaring omission that exists at the outset is the fact that Defendants heavily rely upon a video with a three-minute gap in the middle of a pivotal time period. Exhibit F to Defendants' Motion, "Dorm B Sleeping," contains a gap from 11:19:38 to 11:22:04 completely lacking in video.[1] This period of time consists of nearly two-and-a-half crucial minutes during the beginning

---

[1] Even without Plaintiff being allowed discovery, it is already apparent that Defendants' purportedly "undisputed" Material Facts (ECF No. 12) are incorrect: Paragraph 10 of the Material Facts states that the video "fairly and accurately depicts events as they occurred in the Dorm B

of Mr. Payton's medical emergency in which there is a complete absence of video evidence of the sleeping area. Defendants' Motion for Summary Judgment is based in large part on its claim that on that video, Brandon Weddle was the first person to notify the individual Defendants of the medical emergency. ECF No. 11-1 at 4. However, for the two and a half minutes before Weddle purportedly notified the officers for the first time, *the video from that angle is completely missing*. Despite this obvious gap, Defendants absurdly claim that their video evidence is conclusive. This gap in the video makes it impossible to know whether other detainees attempted to notify the Defendants of Mr. Payton's medical emergency from the same position, and how they did so.[2]

Defendants' exhibits in support of their Motion for Summary Judgment are further inapplicable because they fail to "blatantly contradict" the allegations in the Complaint and thus will not conclusively resolve the issue. *Scott,* 550 U.S. at 380. Defendants' 23-page memorandum fails to show a single way in which their video evidence contradicts the allegations in Plaintiff's Complaint (ECF No. 1). Rather than contradicting Plaintiff's claims, Defendants' Motion only puts forward their side of the story: that the Defendant officers quickly came to Mr. Payton's aid after being notified of an emergency. Neither the video nor Defendants' Motion address Plaintiff's claims that correctional officers were supposed to be monitoring the dorm, that detainees quickly began yelling for help, that after not hearing a response, several different detainees tried to alert the correctional officer, that another detainee besides Brandon Weddle told a guard that Mr. Payton was not breathing, and that one of the officers, stated that "dealing with this wasn't his job." ECF

---

Sleeping area," while neglecting to note that the document *was missing almost three crucial minutes of tape*. This failure alone should make clear that Defendants' attempt for summary judgment on its one-sided "undisputed" facts cannot be trusted and must not be considered until both sides have been able to conduct discovery.

[2] Defendants' filings are silent as to the missing footage in this crucial period of video, and exactly *why* such crucial video is missing is further discovery that Plaintiff is entitled to.

No. 1 at ¶¶ 27-32; ¶ 60. Without any audio or video of Defendants' actions during the beginning of Mr. Payton's medical emergency, it is impossible to contradict the claims alleged in the complaint. Unlike *Scott*, where the plaintiffs' claims were completely contradicted by video evidence, here, Defendants have failed to show a single way in which the video they produced contradicts Plaintiff's allegations.

Many further questions remain unanswered from the videos put forth by Defendants. For instance, at 11:22:20-26 of the "Dorm B Sleeping" video, a man in yellow runs up to the window that Defendants claim is nearest to the workstation where Defendants were during the medical emergency. This is almost a minute before Defendants claim they were notified, yet without discovery, Plaintiff is unable to determine who this person was, why he ran up to the area nearest the desks, and what if any steps he took to notify the Defendants of the medical emergency.

Additionally, these supposedly-conclusive videos fail to provide any audio, which would be highly relevant to Plaintiff's claim that Defendants "desperately attempted to verbally alert the guards to the emergency." ECF No. 1, ¶ 28. This information can be gathered through the discovery process, however, as the testimony of those present—both Defendants and those detainees near Mr. Payton— is critical to determining the variety of ways in which detainees attempted to notify the officers of Mr. Payton's obvious medical distress in the four minutes before Defendants entered the room. Plaintiff is entitled to conduct full and robust discovery in order to answer these questions, which, like *Michael* and *Edwards* will provide additional facts making clear that Defendants' video is not a conclusive record of the incident.

The Supreme Court has held that an officer's subjective knowledge of a medical emergency can be proven by circumstantial evidence. *Farmer v. Brennan,* 511 U.S. 825, 842, (1994) ("Whether a prison official had the requisite knowledge . . . is a question of fact subject to

8

demonstration in the usual ways, including inference from circumstantial evidence."); *Vaughn v. Gray*, 557 F.3d 904, 908–09 (8th Cir. 2009). While Defendants' declarations uniformly claim that Defendants Arthur, Hughes, and Branson did not become aware of the medical emergency until the detainee Brandon Weddle moved into the sleeping area and notified them, ECF No. 12 at ¶ 16, Plaintiff has the right to take discovery to determine whether that is true. A variety of circumstantial evidence may exist that could call into question when exactly Defendants became aware of the medical emergency. For example, it is an open question of fact as to whether Defendants Arthur, Hughes, and Branson were supposed to be actively and continuously monitoring the dayroom via surveillance footage, which would have put them all on notice significantly before inmates had to go bang on the windows to plead for help.

By attempting to move for summary judgment without discovery, Defendants are seeking to prevent Plaintiff from learning any of those facts. Among the relevant information that is likely to be found during the discovery process is the following:

- The names of detainees who were witness to the actions of Mr. Payton and Defendant officers that night.

- The Defendants' distance from Mr. Payton's position in the dayroom, and whether a person's shouts could reach the Defendants.

- What Defendant officers were doing during the beginning of the medical emergency, and what they were supposed to have been doing.

- Which officer told the detainee that responding to the medical emergency was not his job.

Because it contains crucial gaps, does not provide audio or other needed angles, and obscures the possibility of circumstantial evidence that could undermine Defendants' claims, Defendants' videos are not "conclusive" and their Motion to Stay discovery should be denied.

**IV.    Defendants' Motion should be denied because their liability exists apart from the video.**

Defendants' Motion incorrectly assumes that their one-sided interpretation of the video means that none of the Defendants can be liable. As explained more fully in Section III above, Defendants' claim that the video is conclusive is wrong. However, assuming *arguendo* that the video shows what Defendants claim it does, Defendants are still liable to Plaintiff for their deliberate indifference in several other facets of their failure to treat Mr. Payton.

First, Plaintiff alleges that the Defendant officers, all trained in CPR, stood and watched Mr. Payton for four and a half minutes without attempting to perform CPR. Case law in this Circuit is clear that "[a]n officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference." *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009). Nothing about the video put forth by Defendants conclusively resolves the facts relevant to Defendants' deliberate indifference in failing to provide CPR to Mr. Payton—in fact, the video supports Plaintiff's allegations that the trained officers provided no medical assistance. Further, many facts related to this claim have yet to be conclusively determined, including whether the officers were trained in CPR or other medical procedures and whether internal MSI policies and procedures required the officers to perform it. These facts are relevant and necessary in order for Plaintiff to successfully defeat Defendants' claims for summary judgment.

Second, Plaintiff also alleges that Defendants were deliberately indifferent in monitoring the day room for the more than four minutes in which Mr. Payton was obviously in distress and Defendants failed to act. Each step of the deliberate indifference analysis is "fact-intensive," *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007), yet Defendants' Motion opposing discovery would prevent Plaintiff from uncovering any of the crucial facts necessary in order to prove deliberate indifference. While Defendants seek to introduce evidence that they had regularly been inspecting the dorms (ECF No. 12-1 at 11), without the broader context of discovery, their facts in support of their actions are completely unmoored from any standard of deliberate indifference. Defendants essentially ask this Court to take them at their word, and that their feeble efforts to save Mr. Payton's life were good enough.  This is not the purpose of the adversarial litigation system, and it cannot be allowed.

Defendants' summary judgment filings rely heavily upon the sworn testimony of the individual Defendants themselves.  In fact, almost every purportedly "undisputed" material fact submitted by Defendants relies upon the sworn testimony of the Defendants or other City employees. *See* ECF No. 12, ¶ 1-25. It is no wonder that such testimony is "undisputed"—Plaintiff has not been given a fair chance to dispute it, either through discovering contradictory evidence or, as important, through an adversarial deposition of these declarants. The Federal Rules clearly contemplate the necessity of providing a party the opportunity to depose a witness before their affidavit is used in a motion: for instance, F.R.C.P. 37(a)(1) states that a party is not allowed to use a witness's evidence in a motion if the witness had not previously been disclosed. This Rule underscores the importance of deposition in order to test a witness's statements. Similarly, courts in the Eighth Circuit routinely strike the testimony of witnesses who are not disclosed in a manner that allows them to be deposed by the opposing party. *See, e.g., Martinez v. Union Pac. R. Co.,* 82

11

F.3d 223, 227 (8th Cir. 1996); *Certain Underwriters at Lloyd's v. SSDD, LLC,* 301 F.R.D. 391, 394 (E.D. Mo. 2014). Defendants' attempt to avoid a rigorous adversarial deposition cannot stand.

Third, Plaintiff has alleged that Defendants Carson and Glass, as policymakers, were deliberately indifferent to the routine incidents of overdoses at their jail. ECF No. 1 at ¶ 46. A supervisor incurs § 1983 liability for a violation of a federally protected right if he fails to train or supervise subordinates who caused the violation, *Brockinton v. City of Sherwood, AR*, 503 F.3d 667 (8th Cir. 2007), or if the supervisor fails to take action such that supervisor "turn[s] a blind eye for fear of what he or she might see." *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011) (citation omitted). At issue in this fact-intensive deliberate indifference analysis is a host of questions surrounding what prior incidents of overdoses Glass and Carson were aware of or turned a blind eye to; what policies they implemented in order to address the routine opiate overdoses occurring in the jail; what policies existed to routinely monitor detainees in the jail; what CPR training they provided (or failed to provide) to individual officers, and whether Defendants' purported "monitoring" from the television screen was pursuant to jail policy.

Last, liability against the City itself may in fact exist separate and apart from the evidence presented in the video. "[M]unicipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009). Defendants' Motion for Leave to Stay Discovery would prevent Plaintiff from determining what policies or customs were in place at Defendant City's jail on the day that Mr. Payton died. Defendant City seems to think that it can be free of liability merely because it claims that its officers came to the scene of the medical emergency at some point after being notified of it. By this logic, the City

could hypothetically have implemented a policy in which its officers never supervise the dorms, where needed medical care is inaccessible in time to respond to emergencies, and where inmates only receive medical assistance if other detainees take responsibility to slam onto windows nearest the officers' space and plead for help. Whether the City has liability is not closely related to Defendants' video production, and thus Defendants' Motion to Stay Discovery should be denied.

**V.    Defendants' Motion should be denied because the "threshold qualified immunity issue" cannot easily be resolved.**

Defendants' Memorandum puts forth the facile claim that there are certain "threshold qualified immunity issues" that can easily and swiftly be resolved. ECF No. 14 at 2. Tellingly, Defendants' Memorandum fails to suggest how such issues could discretely be resolved, and this is for a good reason: it would be nearly impossible to separate qualified immunity from the other discovery that Plaintiff is entitled to take.[3] Defendants' Motion argues that the Defendant officers are entitled to qualified immunity because, "their conduct comported with and did not violate clearly established law." ECF No. 10 at ¶ 6. Thus, under that logic, all discovery related to the existence of a constitutional violation is relevant.

Bound up in both the qualified immunity and liability analyses are likely to be the same sets of disputed facts yet to be uncovered. For instance, in *McRaven,* 577 F.3d at 982 (8th Cir. 2009), several defendant correctional officers appealed their denial of summary judgment on qualified immunity. Upholding the denial of summary judgment, the Eighth Circuit found that disputed material facts regarding the officers' knowledge of the plaintiff's medical problem

---

[3] Further, even if there were to be a finding of qualified immunity for the individual officers that the constitutional rights were not clearly established—which they are—Defendant City of St. Louis could still be liable for its own deliberate indifference. *See Moyle*, 571 F.3d at 818 (8th Cir. 2009) ("There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach.").

prevented qualified immunity analysis as well as summary judgment. *Id.* This Memorandum has discussed the multitude of facts that have yet to be uncovered in discovery that are likely to create material disputes of fact that are highly relevant to constitutional liability as well as qualified immunity.[4] A limited qualified immunity discovery, followed by a second discovery, would likely result in duplicative discovery processes and discovery disputes between the parties about whether or not an issue touches upon qualified immunity. Defendants' attempt to avoid discovery by suggesting a limited period of discovery on qualified immunity is both impracticable and will only lead to a greater expenditure of judicial resources and those of the parties.

## CONCLUSION

Defendants failed to confer with the Plaintiff prior to submitting their motion and failed to show good cause for their motion in violation of Federal Rule of Civil Procedure 26(c)(1). In addition, such a maneuver is patently unfair and makes a mockery of the adversarial system contemplated by the Federal Rules of Civil Procedure. Defendants' motion must be denied, and discovery should begin.

Dated:  September 9, 2020          Respectfully submitted,

                                   By: /s/ *John M. Waldron*

                                   Blake A. Strode (MBE #68422MO)
                                   Maureen Hanlon (MBE #70990MO)
                                   John M. Waldron (MBE #70401MO)
                                   ARCHCITY DEFENDERS, INC.
                                   440 North 4th Street, Suite 390
                                   Saint Louis, MO 63102

---

[4] The unconstitutional actions alleged in the Complaint against the Defendant correction officers have long been clearly established in this district. *See Gordon v. Frank,* 454 F.3d 858, 863 (8th Cir. 2006) ("[W]e have recognized that a reasonable officer would know that it is unlawful to delay medical treatment for a detainee exhibiting obvious signs of medical distress."); *Thompson v. King,* 730 F.3d 742, 750 (8th Cir. 2013).

Tel: (855) 724-2489
Fax: (314) 925-1307
bstrode@archcitydefenders.org
mhanlon@archcitydefenders.org
jwaldron@archcitydefenders.org

15