UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

VELMA PAYTON, individually and )
as the surviving mother of Decedent, )
LOUIS LYEN PAYTON, deceased. )
)
    Plaintiff, )
)
    v. )
)    Cause No. 4:20-cv-861-SEP
CITY OF ST. LOUIS, et al. )
    Defendants. )    **JURY TRIAL DEMANDED**
)

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S 56(d) MOTION

Late in the night on August 1, 2018, Louis Payton died of a drug overdose at St. Louis City's Medium Security Institution, commonly referred to as the "Workhouse." The correctional officers responsible for his safety – Defendants Philander Hughes, Tannaka Boler, Matthias Arthur, and Ryan Branson – failed to monitor the room, failed to recognize that Payton was in distress, failed to provide life-saving care in the form of the drug Naxolone, and failed to provide CPR despite being trained to do so. The Defendant City of St. Louis and Defendants Dale Glass and Jeffrey Carson made the policy decision to refuse correctional officers access to Naxolone and training on responses to opioid overdoses for just these kinds of crises. For these reasons, Mr. Payton suffered a violent, painful, and altogether preventable death. Plaintiff Velma Payton, the mother of the deceased, filed this action to hold the Defendants accountable for their actions. Prior to commencing discovery, the Defendants seek summary judgment and a motion to stay discovery pending this Court's ruling on their summary judgment motion. *See* Docket Nos. 10 and 13. For the reasons that follow, Ms. Payton respectfully asks the Court to deny Defendants' motion for

1

summary judgment or, in the alternative, defer consideration of the motion until the close of discovery, pursuant to Federal Rule of Civil Procedure 56(d).

## LEGAL STANDARD

"[S]ummary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010). Rule 56(d) "allows a party opposing summary judgment to request the court postpone a decision until adequate discovery is completed" or to deny the motion outright. *Id.*; *see also* Fed. R. Civ. P. 56(d). To succeed on a motion brought under Rule 56(d), the nonmovant "must file an affidavit affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014). The Court should grant a Rule 56(d) motion when the non-movant shows by affidavit: (1) there are specific facts that they hope to elicit from further discovery, (2) the facts sought exist, and (3) these sought-after facts are 'essential' to resist the summary judgment motion. *Id.* at 895.

## ARGUMENT

The Supreme Court has made clear that summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012). Where the failure to allow discovery deprives the nonmovant of a fair chance to respond to a summary judgment motion, summary judgment is not appropriate. See *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999).

2

For this reason, Federal Rule of Civil Procedure 56(d) allows non-movants to request courts dismiss or defer a motion for summary judgment until after adequate discovery has been completed, if they otherwise cannot present facts sufficient to justify their opposition. *Iverson*, 172 F.3d at 530. This is to prevent a party from being unfairly thrown out of court by a premature motion for summary judgment. *Id.* (citing *Celotex* 477 U.S. at 326). The Eighth Circuit has held that Rule 56(d) "should be applied with a spirit of liberality." *United States ex. rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002).

Thus, courts routinely find it proper to defer consideration of summary judgment or deny it without prejudice because discovery has not been completed. *See id.* at 531 (reversing district court's grant denial of summary judgment when relevant documents were unproduced and entirely within the moving party's control.); *see also Nat'l Sur. Corp. v. Dustex Cor*p., 291 F.R.D. 321, 328 (N.D. Iowa 2013) ("Allowing a party to request a continuance for further discovery helps prevent a party from being unfairly thrown out of court."); *Palmer v. Tracor, Inc.*, 856 F.2d 1131, 1133 (8th Cir. 1988) (reversing district court's order of summary judgment where plaintiff had not been provided an adequate opportunity to conduct discovery.) .

Here, the denial of summary judgment without prejudice is appropriate. Plaintiff has not been able to take discovery of any type, nearly all of the relevant discovery is in the custody of Defendant City, and the discovery sought after is necessary in order to resist summary judgment. In the alternative, the Court should defer ruling on the motion for summary judgment until discovery has completed.

I.     **Specific, essential facts exist necessary to resist Defendants' summary judgment motion as to Plaintiff's Failure to Provide Medical Care and Treatment Claims against the Defendants.**

To succeed on these claims, Plaintiff must show that the defendants acted with deliberate indifference to Mr. Payton's serious medical needs. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (quoting *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006) (internal quotation marks omitted)). "Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health." *Vaughn*, 438 F.3d at 850.

Defendants make several arguments in support of summary judgment on these claims. First, they contend that video evidence shows the defendants acted immediately upon being made aware that Mr. Payton was suffering from medical distress, citing to the Supreme Court case *Scott v. Harris*, 550 U.S. 372, 379 (2007). Second, they argue that "Plaintiff cannot establish that the defendants actually knew of and deliberately disregarded [Mr. Payton's] serious medical need" based on several self-serving affidavits and incomplete video footage. Third, they say that Defendants Branson, Arthur and Hughes fulfilled their Constitutional obligations despite failing to administer CPR as they were trained to do, citing to several inapposite cases discussing the Constitutional obligations police officers have in the field when making an arrest. Finally, they argue that Plaintiff cannot prove her claims against Defendants Carson and Glass based on their role as supervisors who were not physically present on the day Mr. Payton died. Throughout, Defendants contend that the individual defendants are entitled to qualified immunity.

The Plaintiff will address each of the Defendants arguments in turn.

## A.  Defendant Officers' Knowledge of Mr. Payton's Medical Emergency

Defendants contend that "Plaintiff cannot establish that Defendants actually knew of and were deliberately indifferent to Payton's serious medical need because, as soon as Branson, Hughes, and Arthur were notified that Payton needed help, they immediately entered Dorm B, announced a medical emergency, and summoned on-site medical professionals." ECF No. 11-1 at

4

6. They support their argument with self-serving affidavits and stills of video apparently showing one Workhouse detainee attempting to get their attention.

The videos submitted by Defendants omit as much as they purport to show, and these omissions are exactly why discovery is necessary. As discussed in Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF No. 10-2), nearly two-and-a-half crucial minutes of surveillance video showing the beginning of Mr. Payton's medical emergency is missing. Additionally, these supposedly-conclusive videos fail to provide any audio, which would be highly relevant to Plaintiff's claim that Defendants "desperately attempted to verbally alert the guards to the emergency." ECF No. 1, ¶ 28. Evidence of what inmates saw and tried to bring to the attention of Defendant jailers is information that can and will be gathered through the discovery process through adversarial depositions of Defendant jailers, interviews with Defendants done by supervisors or investigators, recorded notes, audio, and potential testimony from medical staff. Additionally, the testimony of those present—both Defendants and those detainees near Mr. Payton—is critical to determining the variety of ways in which detainees attempted to notify the officers of Mr. Payton's obvious medical distress in the four minutes before Defendants entered the room. This information will undermine Defendants' claim that they only became aware of Mr. Payton's medical emergency four minutes after it started. *See Vaughn v. Gray*, 557 F.3d 904, 908–09 (8th Cir. 2009) (holding that proof of whether and when prison employees became aware of medical emergency could be inferred by circumstantial evidence.)

The video Defendants reference shows that several detainees were in the room when Mr. Payton began to show signs of medical distress. The identity of these men, and their testimony that inmates notified Workhouse employees, both exists and is essential to undermine Defendants' claims. Additionally, at 11:22:20-26 of the "Dorm B Sleeping" (ECF No. 10-2) video, a man in

yellow runs up to the window that Defendants claim is nearest to the workstation where Defendants were during the medical emergency. This is almost a minute before Defendants claim they were notified, yet without discovery, Plaintiff is unable to determine who this person was, why he ran up to the area nearest the desks, and what if any steps he took to notify the Defendants of the medical emergency. This evidence both exists in the Defendants' possession and is necessary to rebut their argument that the correctional officers were not aware of Mr. Payton's distress for several minutes and acted immediately upon being made aware.

Further, discovery is also likely to unearth evidence related to Defendant Boler, who is deceased and therefore did not submit an affidavit in support of Defendants' Motion for Summary Judgment. It is a common jail and police practice to take statements of witnesses to an of an in-custody death.  Mr. Boler's statement (as well as the initial statements of all individual defendants) likely exists, and the statements within it are essential in order to determine his knowledge of the incident.

**B.  Failure to Provide Medical Care Against All Individual Defendants**

Defendants' Summary Judgment briefing first claims that that the defendant officers present at the scene of Mr. Payton's medical emergency cannot be held to be deliberately indifferent. ECF No. 11-1 at 8-10.  As discussed more fully in Plaintiff's Response to Defendants' Motion for Protective Order, Defendants are wrong on the law because, under the fact-specific inquiry necessary in deliberate indifference claims, jail officers who have been trained in CPR can be found deliberately indifferent if they fail to provide such care. ECF No. 19 at 10-12.

To rebut Defendants' summary judgment motion, it is necessary to show that the Defendant officers had, in fact, been trained in CPR. It is also relevant whether Lieutenant Hughes had undergone training in recognizing signs and symptoms of overdose training. Both documents in

6

the possession of Defendant City and the deposition testimony of the Defendant officers exist that would refute Defendants' claim that they had no obligation to provide CPR.

Next, Defendants argue that Plaintiffs cannot establish deliberate indifference as to Defendants Carson and Glass, both policymakers at the Workhouse. ECF No. 11-1 at 11-12. At issue in this fact-intensive deliberate indifference analysis is a host of questions surrounding what prior incidents of overdoses Glass and Carson were aware of or turned a blind eye to; what policies they implemented in order to address the routine opiate overdoses occurring in the jail; what policies existed to routinely monitor detainees in the jail; what CPR training they provided (or failed to provide) to individual officers; what training they offered employees regarding opiate overdoses; and whether Defendants' purported "monitoring" from the television screen was pursuant to jail policy. This evidence, in the form of paper documentation and testimony of City employee witnesses, indisputably exists. Further, these facts are essential in order to show that there is a material issue of fact as to whether Defendants were deliberately indifferent in setting medical and other policies at the jail.

### C.  Qualified immunity

Defendants' Motion argues that the Defendant officers are entitled to qualified immunity because, "their conduct comported with and did not violate clearly established law." ECF No. 10 at ¶ 6. This argument is based upon Defendants' one-sided explanation of the events, which Plaintiff is entitled to rebut with evidence of her own.

Bound up in both the qualified immunity and liability analyses are likely to be the same sets of disputed facts yet to be uncovered. For instance, in *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009), several defendant correctional officers appealed their denial of summary judgment on qualified immunity. Upholding the denial of summary judgment, the Eighth Circuit found that

disputed material facts regarding the officers' knowledge of the plaintiff's medical problem prevented qualified immunity analysis as well as summary judgment. *Id.*  As discussed in Section I, A *supra*, there are a multitude of facts related to Defendants' knowledge of Mr. Payton's medical emergency that exist and which are essential in order to create a material issue of fact that will prohibit summary judgment.[1]

**II.      Specific, essential facts exist necessary to resist Defendants' summary judgment motion as to Plaintiff's *Monell* claims against the Defendant City.**

Defendants base their claim for municipal liability solely on the lack of an underlying constitutional violation. ECF No. 11-1 at 15. This argument, however, ignores the fact that Defendant City of St. Louis could still be liable for its own deliberate indifference. See *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) ("There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach."). Because Defendants failed to move for summary judgment on claims specific to the City's own liability, summary judgment should not be granted, as the City could still be found liable independent of any individual liability. However, during the discovery process, Plaintiff is likely to uncover evidence which will support her claims of deliberate indifference against the City. This includes policies related to the City's training of its officers on CPR or responses to overdoses, policies related to the in-person and video monitoring of the dormitories at the jail, and policies related to the number of staff working at the Workhouse. The policies that exist are in the

---

[1] The unconstitutional actions alleged in the Complaint against the Defendant correction officers have long been clearly established in this district. *See Gordon v. Frank,* 454 F.3d 858, 863 (8th Cir. 2006) ("[W]e have recognized that a reasonable officer would know that it is unlawful to delay medical treatment for a detainee exhibiting obvious signs of medical distress."); *Thompson v. King,* 730 F.3d 742, 750 (8th Cir. 2013).

possession of the Defendants. Identifying customs will require discovery, including both depositions and interrogatories made of the Defendants.

**III.     Specific, essential facts exist necessary to resist Defendants' summary judgment motion as to Plaintiff's state wrongful death claim against Defendants Hughes, Boler, Branson, Arthur, and St. Louis City.**

Defendants further move for summary judgment based upon Ms. Payton's state claim for wrongful death against all defendants. Defendants claim that they are entitled to summary judgment as to Defendants Branson, Hughes, and Arthur based on a claim of official immunity. ECF No. 11-1 at 16-17. Their claim for summary judgment as to Defendant City is based upon their contention that the City is entitled to sovereign immunity. Because each of these claims require discovery in order to show that material disputes of fact exist, Plaintiff's Motion to Deny or Defer Summary Judgment should be granted.

**A.  Official Immunity**

Defendants' claim for official immunity relies upon whether or not they acted in bad faith or with malice, which requires discovery. Public employees are not entitled to official immunity for acts of negligence committed during the course of their official duties where those acts were done in bad faith or with malice. *Blue v. Harrah's N. Kansas City, LLC*, 170 S.W. 3d 466, 479 (Mo. App. W.D. 2005) (finding highway patrolman not entitled to official immunity where plaintiff put forth evidence of "conscious wrongdoing" by officer); see also *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Rozell v. Stiefermann*, 726 S.W.2d 342, 343-344 (Mo. App. W.D. 1987).   Evidence of malice or bad faith sufficient to defeat official immunity exists where the defendant "wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986).

Plaintiff has alleged that Defendants acted in bad faith and with malice. ECF No. 1. ¶ 131. Missouri case law is clear that whether or not a defendant acts with malice is a fact-intensive analysis *See Blue,* 170 S.W.3d at 480 (summary judgment denied when Plaintiff produced evidence by which a jury could find that the officer took part in "conscious wrongdoing.")  Here, the facts that would show Defendants' malice will be uncovered during the discovery process. As discussed in Section I, *supra*, this includes testimony from all witnesses to Mr. Payton's medical emergency, analysis of the reports drafted at the time of the incident, and consideration of the officers' policies and training related to overdoses. For each of these topics, Plaintiff has no way to uncover the facts at this point without discovery.

## B.  Sovereign Immunity

Similarly, whether or not Defendants are entitled to sovereign immunity requires discovery in order to refute the claims of Defendant City. The City's claim that "Plaintiff cannot set forth any evidence to show that City waived sovereign immunity" ignores the fact that Plaintiff has not been given time to conduct this necessary discovery. It also implicitly recognizes that the way that Plaintiff would do this is through the discovery process. Defendant spills several pages of ink arguing about which City documents do or do not show that the City waived sovereign immunity because of its admitted "self-insurance" plan. However, it does so without allowing Plaintiff to depose City officials, request City documents, and propound interrogatories to the City, all of which are likely to produce evidence likely to show that there is a dispute of fact as to whether the City maintained self-insurance. This evidence exists, but without any discovery, Plaintiff is not able to produce it for the Court. Like access to the jail records that will provide evidence of witnesses and reports related to Mr. Payton's death, the City is largely the sole owner of many of the records that show that the City waived immunity.

**IV.    Conclusion**

Defendants' motion should be denied as premature because "there has been no discovery on any claim or defense, no proposed scheduling order has been submitted, no discovery deadlines have been set, and [the Defendants'] [Motion] opens the door to unnecessary and inappropriate piecemeal disposition of issues in this case." *Cmty. Voice, L.L.C. v. Great Lakes Commc'n Corp.*, No. C12-4048-MWB, 2012 WL 3043064, at *2 (N.D. Iowa July 25, 2012). The full extent of the required discovery – currently in the Defendants' possession – is outlined in the declaration attached herewith as Exhibit A. The discovery of these facts does not constitute a "fishing expedition" but rather represents necessary "additional evidence [that] [will] rebut the opposing party's demonstration of the absence of a genuine issue of material fact." *Bumbales v. City of Vandalia*, No. 2:18-CV-13-JMB, 2018 WL 3575085, at *3 (E.D. Mo. July 25, 2018) (citing *Robinson v. Terex Corp.,* 439 F.3d 465, 467 (8th Cir. 2006)).

For these reasons, the Plaintiff requests that the Court deny the Defendants' motion for summary judgment, or in the alternative, defer ruling on the motion to allow for discovery as provided by Rule 56(d).

Dated:  September 14, 2020                    Respectfully submitted,

By: /s/ *Maureen Hanlon*

Blake A. Strode (MBE #68422MO)
Jack Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
ARCHCITY DEFENDERS, INC.
440 North 4th Street, Suite 390
Saint Louis, MO 63102
Tel: (855) 724-2489
Fax: (314) 925-1307
bstrode@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org