UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VELMA PAYTON, individually and as the surviving mother of Decedent, and LOUIS LYEN PAYTON, deceased,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ST. LOUIS, MISSOURI, et al.,<br><br>    Defendants. | Case No. 4:20-cv-00861-SEP |

## MEMORANDUM AND ORDER

Before the Court are Defendants' Motion for Summary Judgment (Doc. [10]), Defendants' Motion for Protective Order Staying Discovery (Doc. [13]), and Plaintiff's 56(d) Motion to Dismiss or Defer Defendants' Motion for Summary Judgment (Doc. [20]). For the reasons set forth below, the Motion for Summary Judgment is granted in part, denied in part, and requires further briefing in part; the Motion for Protective Order Staying Discovery is granted; and the Rule 56(d) Motion is denied.

### FACTS AND BACKGROUND

Plaintiff Velma Payton brings this action individually and as the surviving mother of her deceased son, Louis Payton, who died of an opioid overdose on August 1, 2018,[1] while detained at St. Louis City's Medium Security Institution (MSI). Doc. [1] ¶ 1. Defendants include Dale Glass, Commissioner of the St. Louis Division of Corrections, and Jeffrey Carson, Superintendent of the MSI, in their individual and official capacities; Corrections Lieutenant Philander Hughes and Corrections Officers Ryan Branson and Matthias Arthur, in their individual capacities;[2] and the City of St. Louis.

---

[1] The Complaint states Mr. Payton died "the night of August 1, 2018," Doc. [1] ¶ 1, but the Defendants allege that the death occurred shortly after midnight on August 2, 2018. Doc. [10] ¶ 1 n.1. This discrepancy is immaterial for purposes of this Order.

[2] Defendants Hughes, Branson, and Arthur will be referred to collectively as "Correctional Officer Defendants." Tannaka Boler, originally a named defendant, is deceased and terminated from this case. Doc. [28].

1

Plaintiff brings three counts.  In Count I, Plaintiff alleges that the Correctional Officer Defendants were deliberately indifferent to Mr. Payton's serious medical needs when they failed to provide timely medical care.  Doc. [1] ¶ 51.  Further, Plaintiff claims Glass and Carson were deliberately indifferent to an acknowledged need for naloxone and breathing support for inmates who are overdosing.  *Id.* ¶ 76-78.  In Count II, Plaintiff brings a *Monell* claim, alleging the City has policies of "inadequately equipping its correctional staff" for medical emergencies and failing to ensure they were "properly trained and supervised to respond immediately to detainee medical emergencies."  *Id.* ¶¶ 83-84.  And in Count III, Plaintiff brings a claim for wrongful death under Missouri law against the Correctional Officer Defendants and the City.  *Id.* ¶ 135.

Defendants moves for summary judgment on all counts, Doc. [10], and for a stay of discovery until the Court rules on the motion for summary judgment, Doc. [13].  Plaintiff opposes the stay, Doc. [19], and she responds to the motion for summary judgment with a motion under Federal Rule of Civil Procedure 56(d), asserting that she cannot adequately oppose the motion for summary judgment without discovery.  Doc. [20].

## LEGAL STANDARDS

### I.  Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact exists if a reasonable jury could return a verdict for" the non-movant.  *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1051 (8th Cir. 2012) (quoting *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 397 (8th Cir. 2011)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"  *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

**II.     Rule 56(d) Motion**

Federal Rule of Civil Procedure 56(d) provides that a court may "allow time . . . to take discovery" when "a [litigant] shows by . . . affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment.  Fed. R. Civ. P. 56(d).  "The party seeking additional evidence must show: '(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.'"  *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014) (quoting *California., ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)).  A party cannot simply set forth some facts she "hope[s] to elicit from further discovery."  *Id.* (quoting *Campbell*, 138 F.3d at 779).  In particular, the party must demonstrate how postponement of a ruling on the summary judgment motion will enable the litigant "by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."  *Id.* at 894 (quoting *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010); *see also McGee v. Healthcare Revenue Recovery Grp., LLC*, 2020 WL 2768784, at *1-2 (E.D. Mo. May 28, 2020)).  "A district court has 'wide discretion' in considering a Rule 56(d) motion."  *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 726 (8th Cir. 2019) (quoting *Toben*, 751 F.3d at 895).

DISCUSSION

<u>Count I:  Deliberate Indifference</u>

**A.  Defendants Hughes, Branson, and Arthur**

Plaintiff alleges that the Correctional Officer Defendants were deliberately indifferent to Mr. Payton's serious medical needs when they "failed to respond to direct information that [Mr. Payton] was having a medical emergency" and when Defendants "failed to provide any first aid or CPR" after calling medical professionals.  Doc. [1] ¶ 73.  Defendants claim the video surveillance disposes of the deliberate indifference claims because it shows that "[a]s soon as they were notified that an inmate needed help," Hughes, Arthur, and Branson—the correctional officers overseeing Dorm B—"immediately" came to Mr. Payton's aid and, "less [than] three seconds" later, alerted medical staff.  Doc. [11-1] at 7.

The Court cannot agree that the video footage is dispositive of Plaintiff's deliberate indifference claims.  It does show the correctional officers entering the Dorm B dayroom

3

immediately upon notification by inmate Weddle. But significant gaps in the sleeping room surveillance video preclude the Court from determining whether that was the first time they were notified of Mr. Payton's difficulties. Between when Mr. Payton begins displaying obvious signs of distress in the dayroom and when Mr. Weddle alerts the correctional officers, there are approximately three minutes, cumulatively, missing from the sleeping room footage. Defendants explain that the cameras are motion-activated, and so the gaps signify only that the camera detected no motion. Doc. [24] at 8. While that may be true, it is obvious from the footage that the camera's failure to detect motion does not correspond to *actual* lack of motion in the sleeping room. Based on the dayroom video, at least ten inmates entered the sleeping room from the dayroom during the missing three minutes of sleeping room footage. Because of the gaps in the sleeping room video, there is no record of what those inmates did upon entering the sleeping room. Based only on the videos, one of those inmates might have tried to get the attention of the guards two minutes or more before Mr. Weddle succeeded in doing so. Thus, the video footage does not "demonstrate the absence of a genuine issue of material fact" with respect to the officers' alleged failure to respond to Mr. Payton's medical distress. *Celotex*, 477 U.S. at 323.

Similarly, the video is not dispositive of Plaintiff's claim of deliberate indifference for failure to render aid. While the video shows the officers calling a code upon seeing Mr. Payton, that fact—even if undisputed—is insufficient to relieve the correctional officers of liability, since the videos do not establish whether the correctional officers in fact knew CPR or whether Mr. Payton was "manifestly in need of such assistance," which Plaintiff contends are both relevant to a determination of liability for failure to render aid in certain circumstances. *McRaven v. Sanders*, 577 F.3d 974, 983 (8th Cir. 2009) (denying qualified immunity because "an officer trained in CPR, who fails to perform it on a prisoner manifestly in need of such assistance, is liable under § 1983 for deliberate indifference").

Defendants also submit statements from four different inmate interviews. Doc. [26]. Those interviews do not establish whether anyone alerted the guards to Mr. Payton's medical emergency prior to Mr. Weddle, nor do they fill in the factual gaps for the failure-to-render-aid claim. Because the surveillance video and inmate interviews do not "demonstrate the absence of a genuine issue of material fact" as to the timeliness or adequacy of the officers' response to Mr. Payton's medical emergency, *Celotex*, 477 U.S. at 323, Defendants fail to meet their initial burden for summary judgment as to Count I against the Correctional Officer Defendants.

4

### B. Defendants Glass and Carson

Plaintiff alleges that Glass and Carson were deliberately indifferent to "the acknowledged need for naloxone and breathing support for those overdosing like Mr. Payton" because they set policies "limiting the accessibility of the naloxone so that it could not be provided to detainees within three to five minutes." Doc. [1] ¶ 78. To the extent Plaintiff intends to bring this claim against Glass and Carson in their official capacities,[3] it is redundant of Plaintiff's claims against the City in Count II; therefore, the official capacity claims against Glass and Carson are dismissed. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.").

In their individual capacities, prisoner supervisors like Glass and Carson "cannot be held liable under § 1983 on a respondeat superior theory." *Scott v. Morgan*, 2016 WL 3971394, at *4 (E.D. Mo. July 25, 2016) (citing *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010)). Supervisors can incur liability "where they are personally involved in a constitutional violation, or where their corrective inaction amounts to deliberate indifference to or tacit authorization of their subordinates' violative practices." *Id.*; *see also Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012).

Plaintiff does not allege that Glass and Carson were personally involved with the alleged events of August 1, 2018. In order to hold them liable, therefore, Plaintiff must show that their inaction amounted to deliberate indifference to or tacit authorization of those events. "This requires a showing that [they] had notice that the policies, training procedures and supervision were inadequate and likely to result in a constitutional violation." *A.H. v. St. Louis Cnty.*, 2017 WL 365437, at *4 (E.D. Mo. Jan. 25, 2017) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). Plaintiff alleges a policy "that correctional officers were not allowed to carry naloxone or other opioid antagonists, and instead would have to wait for medical staff or other emergency help to respond to a scene." Doc. [1] ¶ 76. In order to hold Glass and Carson liable under Count I, Plaintiff will have to show that such a policy existed, that it was inadequate, and that Glass and Carson had notice of that inadequacy.

---

[3] Because the Complaint's caption lists Glass and Carson in both individual and official capacities, and Count I is the only count against them, the Court will assume that Plaintiff intends to level Count I against them in both capacities.

5

In their Motion for Summary Judgment, Defendants argue that Count I as to Defendants Glass and Carson fails because their "general responsibility for supervising" is insufficient to establish personal involvement (which, as noted above, Plaintiff does not allege and does not need to prove) and because Plaintiff cannot "support her contention that Glass and Carson may be held liable for Payton's death because only medical staff at MSI carried naloxone." Doc. [11-1] at 11. Defendants' argument rests on a misunderstanding of the deliberate indifference standard for supervisors, *id.* at 11-12, and they proffer no undisputed material facts specific to Glass and Carson, *see* Doc. [12]. Thus, they fall far short of "demonstrat[ing] the absence of a genuine issue of material fact" as to the deliberate indifference claim against Glass and Carson in their individual capacities. *Celotex*, 477 U.S. at 323.

### C. Qualified Immunity

Defendants also argue that all five individual defendants are entitled to summary judgment on the basis of qualified immunity. Qualified immunity is "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court and Eighth Circuit "repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007). Officials can move for dismissal based on qualified immunity before or after discovery has been conducted, and they are "entitled to a ruling." *Payne v. Britten*, 749 F.3d 697, 699 (8th Cir. 2014) ("When an official properly and timely files a motion for dismissal or for summary judgment asserting qualified immunity, the official is entitled to a ruling on the issue of qualified immunity.").

"At the summary judgment stage, a defendant is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional statutory right; and (2) the right was clearly established at the time of the deprivation." *Id.* at 708 (Riley, C.J., concurring) (quoting *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). "The party asserting the defense of qualified immunity has the burden of establishing 'the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences.'" *McGuire v. Cooper*, 952 F.3d 918, 922 (8th Cir. 2020) (quoting *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008)). "If there is a genuine dispute concerning predicate facts material to the qualified immunity issue,

6

the defendant is not entitled to summary judgment." *White*, 519 F.3d at 813; *see also King v. Barton*, 2013 WL 5538722, at *15 (E.D. Mo. Oct. 8, 2013) (finding officials not entitled to summary judgment on qualified immunity grounds when the Plaintiff "produced sufficient evidence to create a genuine issue of material fact regarding whether [the plaintiff's] Fourteenth Amendment rights were violated").

Defendants assert that the individual defendants are entitled to qualified immunity because "their conduct comported with and did not violate clearly established law." Doc. [11-1] at 13. They make two arguments for that claim. First, they argue that there was no improper delay in responding or rendering aid, and that the supervisors had no personal involvement. The Court has already found that Defendants' factual showing—i.e., the surveillance video footage and inmate interviews—does not demonstrate an absence of any disputed issue of material fact as to any of the individual Defendants' liability. Thus, Defendants have not provided a sufficient factual showing for the Court to find qualified immunity based on the lack of such liability. *See, e.g.*, *Kukla v. Hulm*, 310 F.3d 1046, 1049 (8th Cir. 2002) (stating that a defendant-officer is not entitled to summary judgment based on qualified immunity when an arrestee "challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest" because there "is a material factual dispute"); *Stockstell v. Dunbar*, 2010 WL 1716150, at *11 (S.D. Iowa Feb. 25, 2010) ("Because there are genuine issues of material fact relating to whether the force used against [plaintiff] was either excessive or objectively unreasonable under the circumstances, defendants are not entitled to summary judgment based on qualified immunity."). Thus, this argument for qualified immunity, like the rest of the claims based on the incomplete factual record, will be denied without prejudice.

But Defendants' second argument for qualified immunity does not depend on that factual record. With respect to each of Plaintiff's claims against individuals, Defendants argue that even if the Court were to disagree with their arguments on individual liability, the individual Defendants would still qualify for qualified immunity because it was not clearly established at the time of the incident that their conduct was a violation of Mr. Payton's constitutional rights. *See, e.g.*, Doc. [11-1] at 10-11 ("Even if this Court were to find otherwise, it was certainly not clearly established on August 2, 2018, that Payton's constitutional rights were violated where the defendant officers promptly called for medical aid . . . ."); 12 ("Regardless, it was certainly not clearly established on August 2, 2018 that all correctional officers must be trained in the use of

7

and carry naloxone."); 14-15 ("In fact, even if the individual defendants had delayed for a period of time before calling for medical assistance, existing law would have put them on notice that such delay, on its own, does not constitute deliberate indifference."). In the interest of resolving Defendants' claim to qualified immunity "at the earliest possible stage in litigation," Plaintiff will be required to respond to Defendants' legal arguments for qualified immunity without further delay. *Hunter*, 502 U.S. at 227. The Court will grant Defendants' request to stay discovery, Doc. [13], as to all other claims in the lawsuit until their argument for summary judgment on the basis of qualified immunity has been fully adjudicated. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) (holding that until the "threshold immunity question"— whether the law was clearly established—"is resolved, discovery should not be allowed").

**Count II: Municipal Liability under *Monell***

Defendants' argue that Plaintiff's municipal liability claim must fail because the surveillance video footage proves that there is no underlying constitutional violation. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). The Court has already rejected that interpretation of the video footage. Thus, Defendants provide no basis for summary judgment as to municipal liability at this stage of the litigation.

**Count III: Wrongful death**

Plaintiff brings a state-law wrongful death claim against Hughes, Branson, Arthur, and the City. Defendants claim that Count III is barred by immunity and fails on its merits as to all Defendants, because no Defendant was negligent in responding to Mr. Payton's medical needs. The Court will address the claims against the Correctional Officer Defendants and the City separately.

### A. Defendants Hughes, Branson, and Arthur

The Correctional Officer Defendants claim they are entitled to official immunity because their relevant conduct was discretionary and reasonable. Doc. [11-1] at 17 ("Here, Branson, Arthur, and Hughes exercised their sound discretion in responding to this rapidly evolving emergency situation by immediately calling on-site medical professionals."). The parties do not dispute that the conduct was discretionary; rather, Plaintiff responds that the discretionary acts were done "in bad faith and with malice." Docs. [1] ¶ 131; [21] at 10. Again, Defendants' support for summary judgment is the surveillance video footage, which they contend shows that

8

the correctional officers responded rapidly and carried out their duties appropriately upon entering the dayroom.  Doc. [11-1] at 17.  For the reasons articulated above, the video does not definitively resolve the factual question whether the officers acted with bad faith or malice, so Defendants' bid for summary judgment on that basis fails.  Defendants did not offer evidence of the "absence of a genuine issue of material fact" as to any element of a wrongful death claim, *Celotex*, 477 U.S. at 323, so they do not satisfy the initial burden for summary judgment as to the merits of that claim either.

### B.  The City

Defendants argue that the City is entitled to summary judgment as to Count III on sovereign immunity grounds and because the claim fails on its merits.  Under Missouri law, the City is entitled to sovereign immunity from tort claims "unless the General Assembly has expressly waived such immunity."  *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo. Ct. App. 2012) (quoting *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 914 (Mo. Ct. App. 2004)); Mo. Rev. Stat. § 537.600.  In addition to express waivers, the City can waive sovereign immunity by obtaining insurance or self-insuring.  *See* § 537.610; Doc. [11-1] at 20.  The City's waiver is not dependent on the disputed conduct of the correctional officers or supervisors; it depends entirely on whether the City obtained insurance or is self-insured.

In the Complaint, Plaintiff alleges that the City obtained insurance, or in the alternative self-insurance, through the Public Facilities Protection Corporation (PFPC), which is funded in part by an annual payment from the City.  Doc. [1] ¶ 133.  Funds from the PFPC, Plaintiff claims, are disbursed to pay "any and all claims against the City, including claims against City correctional officers" for violations akin to those alleged in the Complaint.  *Id.*  The City denies that it has any insurance plan that covers the allegations in this action and accordingly insists that sovereign immunity bars Plaintiff's claim against it.  Doc. [11-1] at 19.  Defendants attach an affidavit from the Register of St. Louis City—the officer charged with custody of all city contracts—verifying that no such contract or ordinance exists.  *See* Doc. [12-13].  Unlike previous Counts, as to which Defendants failed to adduce sufficient facts to satisfy the initial threshold for summary judgment, the City has met that threshold as to Count III.  The Motion for Summary Judgment as to Count III against the City thus survives initial review.

As to Count III against the City, then, the Court must consider whether to grant Plaintiff's Rule 56(d) Motion requesting additional discovery before responding to Defendants' Motion for

9

Summary Judgment.  In order to obtain relief under Rule 56(d), a plaintiff must "set forth in affidavit form" the "specific facts" essential to summary judgment that will be elicited through further discovery.  *Toben*, 751 F.3d. at 895.  In support of her Rule 56(d) Motion, Plaintiff asserts that evidence exists that is "likely to show that there is a dispute of fact as to whether the City maintained self-insurance," and that "without any discovery, Plaintiff is not able to produce it for the Court."  Doc. [21] at 10.  But Plaintiff fails to specify what facts she believes further discovery will elicit, as the Rule 56(d) standard requires.  Her vague request to "depose City officials, request City documents, and propound interrogatories to the City" does not appear in the supporting affidavit and does not include specific, discoverable facts.  *Id.*  Therefore, Plaintiff has not shown that further discovery is needed to respond to Defendants' Motion for Summary Judgment as to Count III against the City, and her Rule 56(d) Motion is, to that extent, denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. [10]) is **GRANTED in part** and **DENIED in part.**  Summary judgment is **GRANTED** as to Count I against Defendants Carson and Glass in their official capacities.  Plaintiff shall have **thirty (30) days** from the date of this Order to respond to (i) Defendants' legal arguments for summary judgment in favor of the individual Defendants on the basis of qualified immunity, and (ii) Defendants' argument for summary judgment as to Count III against the City on the basis of sovereign immunity, after which Defendants will have **ten (10) days** to reply.  The Motion for Summary Judgment is in all other respects **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's 56(d) Motion to Dismiss or Defer Defendants' Motion for Summary Judgment (Doc. [20]) is **DENIED** as it relates to the City's sovereign immunity defense to Count III.  With respect to all other claims, the Rule 56(d) Motion is **DENIED as moot** in light of the denial of the Motion for Summary Judgment.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order Staying Discovery (Doc. [13]) is **GRANTED**.  Discovery is stayed pending the Court's ruling on Defendants' Motion for Summary Judgment on grounds of qualified immunity.

**IT IS FINALLY ORDERED** that, no later than **Friday, May 14, 2021**, Plaintiff shall submit a brief, not to exceed fifteen (15) pages, reciting the legal standard for each count in the Complaint; listing in detail the discovery she believes is necessary to develop her case as to each of those counts; and proposing a plan for obtaining such discovery in a manner consistent with

Federal Rules of Civil Procedure 1 and 26(b)(1).  Defendants shall submit a response to Plaintiff's proposal, not to exceed fifteen (15) pages, no later than **Friday, May 28, 2021**.  Upon resolution of the Defendants' Motion for Summary Judgment, the Court will set a hearing date for establishment of a discovery plan.

Dated this 31st day of March, 2021.

                                                                               *Sarah E. Pitlyk*
                                                                               _____
                                                                               SARAH E. PITLYK
                                                                               UNITED STATES DISTRICT JUDGE